Dowagiac Manufacturing Company *v.* Thurston.

[No. 3,048. Filed March 7, 1900.]

Contracts.—*Conditional Sale.—Complaint.—Sufficiency.*—A complaint based upon a written contract exhibited, by the terms of which it was agreed between the parties that defendant was authorized to sell plaintiff's machinery in a certain territory, settlement to be made at a specified date, in farmers' notes or in cash, the title and ownership of the goods to remain in plaintiff until sold and settled for by defendant, alleged that certain machinery was delivered to defendant and that he refused to settle for same in notes as agreed, and demanded judgment for the price of the machinery alleged to be due and unpaid. *Held*, that the complaint showed a cause of action.

From the Shelby Circuit Court. *Reversed.*

*J. W. Morgan, D. L. Wilson* and *W. A. Yarling*, for appellant.

*K. M. Hord* and *E. K. Adams*, for appellee.

Dowagiac Mfg. Co. *v.* Thurston.

BLACK, J.—The court below sustained a demurrer for want of sufficient facts to the complaint of the appellant against the appellee, based upon a written contract exhibited, by the terms of which it was agreed between the parties that the appellee was thereby authorized to sell the grain-seeding machinery manufactured by the appellant in certain territory, namely, Shelby county, Indiana; and, in consideration of this authorization, the appellee agreed to purchase of the appellant all grain drills and seeders of appellant's manufacture to supply his trade in that territory, at prices shown by printed list on the reverse side of the contract, and to settle for the same October 1st following the date of invoice, in good farmers' notes given for the same, with a discount of twenty-five and ten per cent., or in cash, with a discount of twenty-five and ten and ten per cent.; said notes to be drawn on blanks furnished by the appellant, due on or before October 1st of the following year, bearing interest from date of sale, seven per cent., and indorsed by the appellee; and unless shown good by "common authority", and in all cases of doubt as to the responsibility of the maker, to be secured by a mortgage on property real or personal amply sufficient to cover payment of the note in full. The appellant, on its part, agreed to deliver said goods to the appellee f. o. b. cars at Dowagiac, in carload lots, and at transfer point in less than carload lots, with advance transfer charge of $1 for each drill, and twenty-five cents per set for press wheels, also freight to transfer point, and to fill further orders promptly so long as appellant had such machines on hand and transportation could be procured, "and to appoint no other agent for said territory", provided the appellee fully performed the foregoing stipulations and agreements. The appellee agreed to look to carriers for loss or damages to goods shipped and receipted for in good order, and that shortages, errors, or other claims should be reported within ten days from receipt of goods. It was further provided that it was understood the goods

were warranted only against breakage caused by manifest defect in material, for the year in which they were sold, and no goods returned to the appellee under warranty to be credited to account, but to be made good or replaced by new goods, as appellant might elect; that "in all cases the title and ownership of goods covered by this contract shall remain and be vested in" the appellant "until sold by" the appellee "in the regular course of business, or settled for as above; and all receipts arising from the sale of these goods shall belong exclusively and absolutely to the" appellant "until settlement is completed according to the terms of this contract." Repairs for drills made since 1890 "to be commissioned and remain the property of the" appellant "until sold by the" appellee "in the regular course of business, for cash only, at printed list prices," the appellee to pay freight, express, and insurance on repairs received, and keep them in good condition, subject to order of the appellant, without charges whatsoever; cash received for sale of repairs to be subject to demand of the appellant; the appellee to receive as commission 25 per cent. of list price, payable at settlement of repair account; all repairs on hand for drills made prior to 1891 to be paid for in cash at settlement time at 25 per cent. off from list. It was provided that the terms of this contract should apply to all goods purchased of the appellant during the continuance of the contract, and that the appellant had the right to cancel the contract at any time when it should become dissatisfied with the appellee. The contract was made on the 21st of January, 1897.

It was alleged in the complaint that, under and in pursuance of this contract, the appellee purchased of the appellant certain drills and grass boxes described, at prices specified, amounting to designated sums, and also, one "steel age on hands" for a stated price,—"said articles, with the price thereof, being stipulated and indorsed on the reverse side of said contract"; that in pursuance of said agreement the ap-

pellant shipped said grain-seeding machines to the appellee in August, 1897, and the invoice thereof, dated August 1, 1897, and they were received and accepted by the appellee under said contract, and not otherwise; that by the terms of the contract appellee was to settle for said grain-seeding machines on the 1st of October next following the date of the invoice, in farmers' notes, with discount therein set out, or in cash, with discount therein mentioned, except the last mentioned item, which was to be settled for in cash October 1, 1897; that the appellee refused on the 1st of October, 1897, to settle with the appellant by delivering to it the farmers' notes as so stipulated, and by the terms of the agreement the appellee became liable to the appellant for the amount thereof in cash, less the discount as set out in the agreement, which amounted to $120, and that on the 1st of October, 1897, there was due the appellant under said contract the sum of $269.75, which was still due and wholly unpaid; wherefore, etc.   The complaint was filed on the 30th of December, 1897.

It is not shown by the complaint whether the goods, for the price of which the action was brought, had been sold by the appellee, or were still in his possession, nor is anything said about the location, possession, or condition of any of the goods at the commencement of the action, or on the 1st of October, 1897.   It is claimed, on the one hand, that the complaint shows a sale and delivery of the goods to the appellee, and, on the other hand, that under the contract the appellee was merely an agent. The complaint alleges the purchase of the goods by the appellee, but it avers that the appellee purchased them of the appellant under and in pursuance of the contract, and that the appellant shipped the grain-seeding machines to the appellee in pursuance of the agreement, and that they were received and accepted by the appellee under the contract, and not otherwise.

In the contract the appellee was authorized to sell the machinery manufactured by the appellant within a desig-

nated territory, and he was referred to as an agent in the provision that the appellant would appoint no other agent in that territory if the appellee should fully perform the agreement. He agreed to purchase of the appellant all drills and seeders to supply his trade in that territory, and it was provided that the terms of the contract should apply to all goods purchased of the appellant during the continuance of the contract. The real character of the contract is to be determined by ascertaining the actual rights and obligations of the parties, rather than from appellations or nominal designations of the parties or their acts.

By the terms of the contract the appellee was to look to carriers for loss or damages in transportation, and was to settle for the drills and seeders on the 1st of October following the date of the invoice thereof, in good farmers' notes given for them (which supposes the sale of the goods by the appellee), with a specified discount, or in cash, with a specified discount, which does not necessarily imply a sale of the goods by the appellee. To settle in cash involves payment in money, and settlement was to be made on the 1st of October after the date of the invoice, either in notes given for sold machines or in cash. In all cases the title and ownership were to remain in the appellant until the goods were sold by the appellee in the regular course of business, or until they were settled for "as above," and all receipts arising from the sales were to belong to the appellant until settlement was completed according to the contract. If at the date fixed for settlement any goods remained unsold in the possession of the appellee, the title thereto was to be still in the appellant; and as to goods which had then been sold by the appellee, they were not the property of the appellant after such sale, but the receipts arising therefrom were to .belong to the appellant until completed settlement; but, in either case, there was to be on the 1st of October of each year a settlement, either in farmers' notes or in cash, for all goods invoiced during the year, including goods sold and unsold.

Dowagiac Mfg. Co. *v.* Thurston.

It is alleged that the appellee, on the 1st of October, 1897, refused to settle by delivering farmers' notes, and by the terms of the contract became liable for cash less the stipulated discount. Notwithstanding the provision that the title to the goods not sold by the appellee and the ownership of the receipts for those sold by him should still remain in the appellant, there having been no completed settlement, yet the appellee agreed that at the specified date he would settle, either in notes, or in cash, and upon his refusal or inability to settle in farmers' notes, he was bound to settle in cash. The provision that the title to the goods should remain in the appellant, until sold by the appellee, or settled for as before provided, implies settlement for goods not sold by the appellee, and which, therefore, could not be settled for in farmers' notes given for the goods, but must necessarily be settled for in the other manner before provided for; that is, in cash, with stipulated discount.

If the appellant had the right, upon the appellee's refusal of a settlement, to cancel the contract as to further dealings between the parties, and to take back the unsold goods, if any, in the hands of the appellee, and to demand the receipts for sales made by the appellee,—as to which we need not decide,—the appellee, by the terms of the contract, was bound to settle on the 1st of October in farmers' notes, or in cash, less the stipulated discounts, for all the goods invoiced before that date. All ownership in goods or proceeds which it was sought by the contract to reserve to the appellant for its protection would cease, by the provisions of the contract, when there had been a completed settlement within the terms of the contract; that is, when the goods were paid for either in farmers' notes or in cash. The appellee stipulated, without condition, to make such settlement, and whatever securities the appellant retained, and however effectively they might have been enforced, the appellee could not complain of the appellant for his failure to resort to any other remedy than a suit to enforce the obligation of the

appellee to pay for the goods invoiced upon his refusal to settle as stipulated in the contract.

The last item mentioned in the complaint, for which recovery was sought, is "one steel age on hands, for the price and sum of $20." We do not find any article so named or any price of that amount, in the price list exhibited as the reverse side of the agreement, annexed to the complaint. Two classes of articles denominated "repairs" are mentioned in the contract, as to which distinct provisions are made. Repairs for drills made since 1890 were to be commissioned, and were to remain the property of the appellant until sold by the appellee for cash only, and they were to be kept subject to the order of the appellant, and the cash received from the sale of repairs was to be subject to demand of the appellant; the appellee to receive as commission twenty-five per cent. of list price, payable at settlement of repair account. A very noticeable distinction is thus made between this class of "repairs," on the one hand, and the drills and seeders, on the other. As to these repairs, the appellant's rights, as intended by the parties, were to order the return thereof, or to demand the cash proceeds, its obligation being to pay twenty-five per cent. commission on settlement; but as to drills and seeders the appellant was entitled to settlements at stated times in farmers' notes or in cash, less discounts, for drills and seeders purchased by the appellee and invoiced up to the date of settlement. All repairs on hand for drills made prior to 1891 were to be paid for in cash at settlement time, at twenty-five per cent. off from list.

It is alleged in the complaint that by the terms of the agreement said last mentioned item was to be settled for in cash October 1, 1897. It is not shown with the definiteness and directness desirable in pleading that the "steel age" mentioned in the complaint comes within what are called repairs in the contract, or to which of the two classes of repairs this particular article belongs. If it belongs to the second class of repairs, the appellant would be entitled to

payment for it in cash October 1, 1897, at twenty-five per cent. off from list. Without regard, however, to this item, as to which the pleading may be made more definite, the complaint shows a cause of action.

Judgment reversed, and cause remanded, with instruction to overrule the demurrer to the complaint.